UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

August 5, 2022

LETTER TO COUNSEL:

    RE:    *Dinah N. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
               Civil No. TJS-21-2038

Dear Counsel:

On November 10, 2020, Plaintiff Dinah N. petitioned this Court to review the Social Security Administration's final decision to deny her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1. The parties have cross-moved for summary judgment. ECF Nos. 11 & 16. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[1] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Acting Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

Dinah N. filed her applications for disability benefits on February 14, 2019. Tr. 11. She alleged a disability onset date of November 2, 2016. *Id.* Her applications were denied initially and upon reconsideration. *Id.* Dinah N. requested an administrative hearing and a hearing was held on September 25, 2020, before an Administrative Law Judge ("ALJ"). *See id.* During the hearing, Dinah N. amended her onset date to February 14, 2019. *Id.* In a written decision dated March 5, 2021, the ALJ found that Dinah N. was not disabled under the Social Security Act. Tr. 11-26. The Appeals Council denied Dinah N.'s request for review, making the ALJ's decision the final, reviewable decision of the agency. Tr. 1-6.

The ALJ evaluated Dinah N.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R.§§ 404.1520, 416.920. At step one, the ALJ found that Dinah N. has not engaged in substantial gainful activity since February 14, 2019, the alleged onset date. Tr. 14. At step two, the ALJ found that Dinah N. suffers from the following severe impairments: degenerative disc disease, diabetes mellitus, neuropathy, obesity, disorders of the female genital organs, herpes, major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, attention-deficit hyperactivity disorder, and learning disability. Tr. 14-15. At step three,

---

[1] This case was originally assigned to Judge Hurson. On June 30, 2022, it was reassigned to me.

the ALJ found Dinah N.'s impairments, separately and in combination, do not meet or equal in severity any listed impairment in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). Tr. 15. The ALJ determined that Dinah N. retains the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) EXCEPT: claimant can occasionally[1] lift and/or carry 20 pounds frequently and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; push and/or pull as much as can lift and/or carry; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; have frequent exposure to hazards such as moving mechanical parts and unprotected heights; have occasional exposure to fumes, odors, dusts, gasses, and poor ventilation; have no exposure to very loud or loud noise; and retains the ability to concentrate, persist, and stay on pace[2] with regard to performing simple, one to six step, routine tasks where such work is performed in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would be occasional contact with co-workers, supervisors, and the general public.
>
> FN 1: The word "occasional" is defined as "occurring from very little up to one-third of the time." While "Frequent" is defined as "occurring from one-third to two-thirds of the time." SSR 83-10.
>
> FN 2: PACE: To be clear, the claimant has no pace limitation when performing this adopted residual functional capacity assessment. Of course, another way of saying the same thing is, the claimant would have a pace limitation if doing more than the specifics of the adopted residual functional capacity. E.g. If she were in an occupation which had tasks requiring performing non-routine tasks in a work environment where she would have constant decision making, frequent changes in the work setting, frequent contact with the general public. Then, yes, she would have problems maintaining pace, but that kind of work is precluded by the adopted residual functional capacity assessment.

Tr. 19.

At step four, the ALJ determined that Dinah N. cannot perform past relevant work. Tr. 24. At step five, relying on testimony provided by a vocational expert ("VE"), and considering the claimant's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Dinah N. can perform, including marker (retail setting), small parts assembler, and collator (printing and publishing). Tr. 25. Accordingly, the ALJ found that Dinah N. was not disabled under the Social Security Act. Tr. 26.

Dinah N. argues that the ALJ made the following errors that warrant remand: (1) the ALJ improperly evaluated the claimant's subjective complaints, and; (2) the ALJ improperly assessed the claimant's RFC. Neither of these arguments have merit.

Dinah N. first argues that the ALJ improperly evaluated her subjective complaints. ECF

No. 11-1 at 4-11. In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. § 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. Id. § 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate how much the symptoms limit the claimant's capacity to work. Id. § 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. Id. To evaluate a claimant's statements, the ALJ must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016). "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Social Security Administration*, 983 F.3d 83, 97 (4th Cir. 2020). In other cases, the ALJ may consider that objective evidence, or lack thereof, along with other evidence. 20 C.F.R. § 404.1529(2). In any case, the ALJ may not rely solely on the lack of objective medical evidence to discredit a claimant's subjective statements. *Id.* A claimant may rely exclusively on subjective evidence to prove how much their symptoms affect their ability to work at the second step of the analysis. *Arakas*, 983 F.3d at 95-97.

Contrary to Dinah N.'s argument, the ALJ did not reject her complaints simply for lack of objective evidence; the ALJ properly evaluated her subjective complaints. After finding that Dinah N's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ considered a multitude of evidence to determine how intense, persistent, and limiting those symptoms are. Tr. 20-24. The ALJ considered (and cited to) the claimant's medical records and medical history, her activities of daily living, her statements and complaints about her symptoms over time, the treatment she underwent and her response to treatment, and prior administrative findings and opinions. Tr. 19-24. In light of this evidence, the ALJ properly determined that Dinah N.'s symptoms were not as severe (or, in the ALJ's words, debilitating) as she alleged. Under the governing legal standards, the ALJ had to consider all evidence, objective and subjective, in connection with his evaluation of the claimant's subjective complaints. The ALJ did not improperly rely solely on the presence or absence of objective evidence in determining the limiting effects of the claimant's symptoms. Dinah N. correctly notes that there is other evidence that suggests her symptoms are more severe than the ALJ found them to be. But the Court will not reweigh the evidence to reach its own conclusions about Dinah N.'s functional limitations. The ALJ's decision is supported by substantial evidence and satisfies the governing legal standards for the consideration of a claimant's subjective symptoms. The Court rejects Dinah N.'s first argument.

Dinah N.'s second argument is that the ALJ improperly evaluated her RFC. Dinah N. argues that the ALJ failed to provide a narrative discussion stating how the evidence supported each conclusion and that the ALJ failed to perform a function-by-function assessment of the claimant's work-related abilities. ECF No. 11-1 at 11-18. She argues that the ALJ did not explain how he determined that the claimant was capable of (1) performing "simple, one to six step, routine tasks where such work is performed in a low stress work environment," as defined by the ALJ,

3

and (2) working in a job that required contact with "co-workers, supervisors, and the general public up to one third of a workday." *Id.* at 14. Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing the evidence that supports it. *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). An ALJ must consider all of a claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (internal quotation marks and citation omitted). In doing so, the ALJ must provide "a narrative discussion describing how the evidence supports each conclusion." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding on the claimant's RFC. *Id.*; *Thomas*, 916 F.3d at 311 ("Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."). An ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion. *Reid v. Comm'r of Social Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

The ALJ's decision contains a detailed discussion of the evidence, including the claimant's subjective reports of her condition over time, the claimant's reported daily activities, treatment notes containing observations of the claimant's condition over time, the results of consultative examinations, and medical opinions. On top of summarizing the evidence and explaining the weight that the ALJ assigned to it, the ALJ also explained how the evidence translated into the RFC determination. Contrary to Dinah N.'s argument, the ALJ's explanation is sufficient for this Court to conduct its review. The claimant's arguments about the ALJ's restrictions limiting the claimant to work consisting of no more than "simple, one to sex step, routine tasks" in a low stress environment, with contact with co-workers, supervisors, and the public up to one third of the workday, lack merit. The ALJ cited substantial evidence in support of these RFC restrictions—namely, the opinions of the State Agency medical consultants and psychological consultants. The ALJ found the opinions of these consultants persuasive and adequately explained how they aligned with other evidence in the record.

The claimant also argues that the ALJ improperly found that "her mental health treatment has been consistently unremarkable and limited predominantly to prescription medication and counseling with no evidence of intensive in-patient treatment or hospitalizations due to medical health concerns," and that she can perform work for a full workday and workweek, even with her moderate limitations in maintain concentration and persistence. Tr. 18; ECF No. 11-1 at 15-19. The ALJ's observations on these point are supported by substantial evidence. As stated above, the ALJ provided a lengthy discussion of the evidence, demonstrated an understanding that the RFC means the most work an individual can do on a full-time basis, and logically explained his findings. The Court declines to reweigh the evidence to reach its own conclusion.

The Court is satisfied that the ALJ adequately assessed all the claimant's functional abilities and provided a logical explanation for how the claimant's limitations affect her ability to work. Because the ALJ explained how the ALJ weighed and considered the evidence, and because the ALJ's findings are supported by substantial evidence, the Court rejects Dinah N.'s argument on this point.

For the reasons set forth above, Dinah N.'s Motion for Summary Judgment (ECF No. 11)

will be **DENIED**, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 16) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

        Sincerely yours,

        /s/
        Timothy J. Sullivan
        United States Magistrate Judge